# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

LAZERRICK DEJUAN CRAIG,    )
                           )
     Plaintiff,            )
                           )
     v.                  )     Case No. 4:21-cv-00255-RDP-NAD
                           )
CHRISTOPHER A. MCLAURIN, et  )
al.,                         )
                           )
     Defendants.       )

## REPORT AND RECOMMENDATION

Plaintiff LaZerrick Dejuan Craig filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights in connection with an alleged inmate assault while he was incarcerated at the St. Clair Correctional Facility.[1]   Doc. 1.   Plaintiff Craig names the following Defendants:  Officer Christopher A. McLaurin, Sergeant Derrick M. Dent, and Hearing Officer Russell A. Jones.  Doc. 1 at 2–3.

Liberally construed, Craig's complaint alleges that Defendants McLaurin and Dent failed to protect him from an inmate assault (in violation of the Eighth Amendment), and that Defendants Jones and Dent violated his right to procedural due process (in violation of the Fourteenth Amendment).  Doc. 1 at 3, 14; Doc. 25

---

[1] Craig since has been transferred to the Donaldson Correctional Facility (Doc. 8; Doc. 23-7 at 1), and then to the Kilby Correctional Facility (Doc. 26).

at 3.  Craig seeks money damages, and a court order removing Defendants from their positions as prison officials.  Doc. 1 at 5.

Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1), this matter was referred to the undersigned for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991); N.D. Ala. Local Rule 72.1.  For the reasons stated below, the undersigned recommends that the court grant Defendants' summary judgment motion (Doc. 23), and deny Craig's summary judgment motion (Doc. 25), because there is no triable issue.

## BACKGROUND

### A.    Factual background

#### 1.    Undisputed facts

As an initial matter, Plaintiff Craig and Defendants agree on the following: On December 14, 2020, in the Restricted Housing Unit (RHU) at St. Clair, inmate Willie Jenkins stabbed Craig, while Defendant McLaurin was on duty and escorting Craig during showers.  Doc. 1 at 14; Doc. 23 at 3–4; Doc. 23-4 at 4.  Craig was taken to the Health Care Unit for medical care.  Doc. 1 at 5; Doc. 23 at 4; Doc. 23-4 at 3.

Jenkins was not handcuffed when he exited his cell and stabbed Craig.  Doc. 1 at 14; Doc. 23-2; Doc. 23-8.

Defendant Dent supervised the RHU.  Doc. 1 at 12; Doc. 23-9.  Defendant Dent's responsibilities included investigating this incident, and Dent completed both

an incident report (Doc. 23-1), and a duty officer report (Doc. 23-3) regarding the incident.  Doc. 23-9; Doc. 25 at 7–8.

Based on this incident, Craig faced a prison disciplinary action, and was charged with disorderly conduct.  Doc. 1 at 14; Doc. 23 at 4; Doc. 23-5 at 1.

Defendant Jones served as the hearing officer at Craig's December 23, 2020 disciplinary hearing.  Doc. 1 at 12; Doc. 23-5 at 2.

Defendant Jones found Craig guilty and recommended sanctions, but the warden disapproved that finding.  Doc. 1 at 15; Doc. 23 at 4; Doc. 23-5 at 3–4.

### 2.     Craig's sworn allegations

Craig alleges the following:  On December 14, 2020, Craig was assigned as the block runner in the RHU.  Doc. 1 at 13.  As part of this job, Craig was passing out meal trays, while Defendant McLaurin "was conducting showers and feeding" (which, "'upon information and belief,'" is against St. Clair rules).  Doc. 1 at 14.

While Craig "had trays in [his] hands," Defendant McLaurin opened inmate Jenkins' cell door without Jenkins "being in any handcuffs."  Doc. 1 at 14.

Jenkins attacked Craig, stabbing him "2 times on the left side of [Craig's] body, once to the head and once to the jaw."  Doc. 1 at 14.

Craig required medical care, lost his position as a runner, and "receive[d] a disciplinary [action] for disorderly conduct."  Doc. 1 at 14.

Defendant McLaurin failed to follow Alabama Department of Corrections

(ADOC) rules, which require all RHU inmates to "have handcuffs on when leaving [their] cell at any and all times."  Doc. 1 at 12.

Defendant McLaurin's failure to handcuff Jenkins allowed Jenkins to stab Craig, and McLaurin "never tr[ied] to stop" inmate Jenkins, "like it was [a] plan." Doc. 1 at 16.

Defendant Dent, as the RHU supervisor, failed to ensure that his officers followed all ADOC rules.  Doc. 1 at 16.

Defendant Dent removed Craig from his job as a runner, because Craig "refuse[d] to go alon[g] with the story [Dent] put together" that Defendant McLaurin was escorting Craig during showers, when Jenkins opened his own cell door and attacked Craig.  Doc. 1 at 16.

As an attachment to his complaint, Craig included his disciplinary hearing report.  Doc. 1 at 19–22.  That report shows that Defendant McLaurin testified that he had handcuffed Craig and was escorting him during showers, when Jenkins "came out of his cell and ran towards inmate Craig and attacked him."  Doc. 1 at 20.

That report also shows that Defendant Jones found Craig guilty of disorderly conduct for "attempt[ing] to kick inmate Willie Jenkins . . . through inmate Jenkins' tray door while being escorted."  Doc. 1 at 21.

The warden disapproved Defendant Jones' finding, stating that, "[b]ased on the arresting officer's testimony, inmate Craig never displayed any disorderly

conduct.  Inmate Craig was assaulted by another inmate while being escorted to the shower."  Doc. 1 at 21.

Craig also included with his complaint a notarized statement from inmate Kevin Pickett, who supports Craig's version of the incident.  Doc. 1 at 23.

### 3.   Defendants' factual responses

While Defendants dispute certain aspects of Craig's version of the relevant incident, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

In their special report, Defendants assert that Defendant McLaurin was escorting Craig during showers when "[Craig] attempted to kick Inmate Jenkins through Jenkins' tray door."  Doc. 23 at 3; *see also* Doc. 23-1 (incident report).

By sworn affidavit, Defendant McLaurin avers that he was escorting Craig during showers, when he saw Jenkins open his own cell door and run to Craig, attacking him.  Doc. 23-8.

Defendants also submitted a duty officer report that Defendant Dent had completed.  Doc. 23-3.  In that report, Defendant Dent stated that Jenkins "manipulated his assigned cell door," and stabbed Craig "during escorted showers." Doc. 23-3.

According to the report for Jenkins' disciplinary hearing, Jenkins was found not guilty of fighting with a weapon, because Defendant McLaurin had testified "that he did not see inmate Jenkins with a weapon."[2]  Doc. 23-6 at 4.

By sworn affidavit, Defendant Dent avers that, as the supervisor of the RHU, his duties included investigating this incident and preparing written reports.  Doc. 23-9.  He avers that on December 14, 2020, Defendant McLaurin and non-party Officer Michael Bearman reported to him that Craig and Jenkins were fighting during showers.  Doc. 23-9.  Defendant Dent learned during his investigation that "several inmate witnesses" said that Craig had "encouraged the altercation verbally with lewd conduct toward inmate Jenkins."  Doc. 23-9 at 1.

By sworn affidavit, Defendant Jones avers that he had no role in this incident, other than having served as the hearing officer for Craig's disciplinary hearing.  Doc. 23-10 at 1.  Defendant Jones also avers that his recommendation was within the administrative regulation guidelines.  Doc. 23-10 at 1.

On December 15, 2020 (i.e., the day after Jenkins' attack on Craig), ADOC validated Craig and Jenkins as known enemies.  Doc. 23-11.

---

[2] By sworn affidavit, Defendant Dent avers that "[Defendant] McLaurin retrieved a weapon used by inmate Jenkins in the incident."  Doc. 23-9 at 1.  And the incident report states that "Officer McLaurin order[ed] inmate Jenkins to stop and to put the weapon down."  Doc. 23-1.  That report also shows that Craig and Jenkins had different gang affiliations.  Doc. 23-1.

## B.     Legal background

Craig's failure to protect claim arises from the Eighth Amendment (incorporated against the States under the Fourteenth Amendment),[3] and his procedural due process claim arises from the Fourteenth Amendment.

### 1.     Failure to protect

The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citation and quotation marks omitted).  "Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  "[A] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury."  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and quotation marks omitted).

In this regard, a prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which the official is subjectively aware*, exists

---

[3] *See, e.g.*, *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 764 & n.12 (2010); *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (stating that, with a few exceptions, the United States Supreme Court "has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States").

and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (emphasis in original).

So, to prove a failure to protect claim, a plaintiff must identify facts that show the following: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury*, 936 F.3d at 1233 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)); *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (similar).

To establish the first element—i.e., a "substantial risk of serious harm"—a plaintiff must identify facts showing extreme conditions that "posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233. In considering this first element, the court uses an objective standard. *Caldwell*, 748 F.3d at 1099.

The second element—i.e., the "defendants' deliberate indifference to that risk"—has two parts, one subjective and one objective. *Marbury*, 936 F.3d at 1233.

To satisfy the subjective component, a plaintiff must identify facts demonstrating that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." *Caldwell*, 748 F.3d at 1099 (citation omitted and alterations in original).

To satisfy the objective component, a plaintiff must identify facts showing

that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner."  *Id.*

Thus, at a minimum, a prisoner must show that a defendant subjectively was aware of facts from which the defendant could have inferred that there was a substantial risk of serious harm, *and* that the defendant actually drew the inference; and, "[o]bjectively, the official must have responded to the known risk in an unreasonable manner," by knowingly or recklessly declining to reduce that risk, despite knowledge regarding how to do so.  *Marbury*, 936 F.3d at 1233.

Then, on the third element (i.e., causation), a plaintiff must identify facts showing a "causal link" between a defendant's "failure to act reasonably and the plaintiff's injury."  *Id.*

Furthermore, "deliberate indifference describes a state of mind more blameworthy than negligence," and an "ordinary lack of due care for the prisoner's interest or safety" will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 835.  A "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983."  *Goodman*, 718 F.3d at 1332 (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).  Rather, prison officials must possess enough details about a threat to enable them to conclude that it presents a "strong likelihood" of injury, not a "mere possibility."  *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown*, 894 F.2d at 1537).

In particular, the Eleventh Circuit has recognized that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury*, 936 F.3d at 1236.

## 2. Denial of procedural due process

A denial of procedural due process claim requires a plaintiff to show the following:  "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013) (citation omitted).  Generally speaking, a prisoner who is subject to disciplinary action has the right to the following procedures:  (1) "advance written notice of the claim violation"; (2) "a written statement" of the "evidence relied upon," and "the reasons for the disciplinary action taken"; and (3) the opportunity "to call witnesses and present documentary evidence," when consistent with institutional safety and correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974) (establishing due process requirements for prisoner disciplinary proceedings); *see O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011).

But, "convicted inmates have no right to a due process hearing before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1347 (11th Cir. 2016); *see Moulds v. Bullard*, 452 F. App'x 851 (11th Cir. 2011).

10

A "prisoner is entitled to due process only when a change in his conditions of confinement is so severe that it lengthens his term of imprisonment or when he is deprived of a benefit ordinarily bestowed on inmates and the deprivation 'imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Hoever v. Belleis*, 703 F. App'x 908, 910 (11th Cir. 2017) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  "The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated," and also "does not create a liberty interest in the 'mandatory' language of prison rules and regulations."  *Morrall v. Warden*, 859 F. App'x 883, 884–85 (11th Cir. 2021).

Furthermore, a prisoner generally does not have a right either against false accusations of wrongdoing, or to a truthful disciplinary report.  *See, e.g.*, *Edwards v. Basilok*, 520 U.S. 641, 648 (1997) (concluding that a prisoner's claim "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker . . . is not cognizable under § 1983").

### C.   Procedural background

In response to an order for special report (Doc. 9),[4] Defendants McLaurin, Dent, and Jones filed a special report supported by affidavits and other evidence. Doc. 23.  In their special report, Defendants assert that the court should grant

---

[4] This case later was reassigned to the undersigned.

summary judgment in their favor because Craig cannot show a deliberately indifferent failure to protect, or a violation of his right to procedural due process; Defendants also assert that they have absolute and qualified immunity from Craig's claims.  Doc. 23 at 7, 10, 13.

On October 29, 2021, the parties were notified that the court would construe the special report as a summary judgment motion, and Craig was notified that he had 21 days to respond to the summary judgment motion by filing affidavits or other materials.  Doc. 24.  That October 29, 2021 order also advised Craig of the consequences of any failure to comply with Federal Rule of Civil Procedure 56.  Doc. 24; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Craig filed a response, in the form of a cross-motion for summary judgment.  Doc. 25.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations

to offer specific facts that create a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's job is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must construe all evidence and draw all reasonable inferences in favor of the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

In addition, on a defendant's summary judgment motion, the court must consider any "specific facts" that a *pro se* plaintiff pleaded in his sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). The court liberally construes a *pro se* pleading. *See, e.g.*, *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (the court should hold a *pro se* pleading to "a less stringent standard than a pleading drafted by an attorney").

The filing of a cross-motion for summary judgment does not affect the applicable standard. *Cooper v. Jefferson Cty. Coroner & Med. Examiner Officer*, 861 F. App'x 753, 755 (11th Cir. 2021) (citing *American Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). The court still must construe all evidence and draw all reasonable inferences in favor of the nonmovant on each

motion.  *Id.*

## DISCUSSION

The undersigned recommends that the court grant Defendants' summary judgment motion (Doc. 23), and deny Plaintiff Craig's cross-motion for summary judgment (Doc. 25).  The court need not address several other issues that Defendants raised in their special report.

## I.    There is no triable issue on Craig's failure to protect claim against Defendants McLaurin and Dent.

There is no triable issue of fact on Craig's failure to protect claim against Defendants McLaurin and Dent.  As explained above, Craig avers that Defendant McLaurin failed to protect him when Craig was stabbed after McLaurin opened inmate Willie Jenkins' cell door without Jenkins "being in any handcuffs."  Doc. 1 at 14.  Craig also alleges that Defendant McLaurin "fail[ed] to follow the rules of ADOC," because "all inmates in [the RHU] must have handcuffs on when leaving [their] cell[s] at any and all times."  Doc. 1 at 12.

With respect to Defendant Dent, Craig alleges that, as a "supervisor," Dent "[was] suppose[d] to make sure all inmates are safe," and that Dent "fail[ed] to follow the rules of ADOC."  Doc. 1 at 12.

### *Alleged inmate assault*

Even taking as true Craig's sworn allegations—i.e., that Jenkins was able to stab him because Defendant McLaurin failed to handcuff Jenkins before opening

Jenkins' cell door—Craig still has not alleged or identified any evidence that Defendant McLaurin or Defendant Dent had the prior knowledge that is necessary to support a failure to protect claim.  As explained above, the plaintiff must identify facts demonstrating that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm."  *Caldwell*, 748 F.3d at 1099 (citation omitted and alterations in original).

On this record, there is no sworn allegation or other evidentiary basis that could support a factual finding that Defendant McLaurin or Defendant Dent knew that Craig or any other inmate was at risk of harm from Jenkins, or that Defendants McLaurin and Dent knowingly or recklessly disregarded that risk.  *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 848).

Craig has not alleged or identified facts that Defendant McLaurin or Defendant Dent had any notice or prior knowledge of a need to protect Craig (or any other inmate) from Jenkins (or any other inmate).  For instance, Craig does not allege that he previously had notified Defendant McLaurin, Defendant Dent, or any other prison official that Jenkins posed a risk of harm to him (or any other inmate).

Defendants did submit an incident report indicating that Craig and Jenkins were affiliated with different gangs. Doc. 23-1.  But, without more, that evidence is insufficient to create a triable issue with respect to the necessary knowledge.  Craig

does not allege or identify any evidence that, based on those apparent gang affiliations, Defendant McLaurin or Defendant Dent knew that Jenkins posed a risk to Craig (or any other inmate).  And the Eleventh Circuit has ruled that even a "generalized awareness of risk" cannot satisfy the subjective awareness requirement on a failure to protect claim.  *See Carter*, 352 F.3d at 1350; *accord, e.g.*, *Marbury*, 936 F.3d at 1236 ("threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm"); *Brooks*, 800 F.3d at 1301 (holding that prison officials must possess enough details about a risk to enable them to conclude that it presents a "strong likelihood" of injury, not a "mere possibility").

Furthermore, that incident report also states that, after Jenkins attacked Craig, "[Defendant] McLaurin order[ed] inmate Jenkins to stop and to put the weapon down, [and] inmate Jenkins complied."  Doc. 23-1.  But Craig alleges that Defendant McLaurin "never tr[ied] to stop" inmate Jenkins, "like it was [a] plan."  Doc. 1 at 16.  While the court must liberally construe and consider any "specific facts" that a *pro se* plaintiff pleaded in his sworn complaint (*see Caldwell*, 748 F.3d at 1098), the plaintiff's sworn factual allegations still must "raise a right to relief above the speculative level."  *See Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quotation marks omitted); *see also Jackson v. Corizon Health*, 2022 WL 303288, at *6 (11th Cir. Feb. 2, 2022) (speculation "is not sufficient to overcome summary

judgment" (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)). Craig's conclusory allegations about a supposed "plan" for Defendant McLaurin to permit Jenkins to attack Craig are speculative and cannot create a jury question on whether Defendant McLaurin or Defendant Dent had the necessary prior knowledge of a risk of harm.

Moreover, without any evidence that Defendant McLaurin or Defendant Dent had prior knowledge that Jenkins posed a risk of harm, Craig's allegations that McLaurin should have handcuffed Jenkins before opening Jenkins' cell door cannot create a triable issue. Doc. 1 at 14; Doc. 25 at 3. Even if McLaurin was negligent in not handcuffing Jenkins, conduct that is only negligent cannot support a failure to protect claim. *See Farmer*, 511 U.S. at 835; *Goodman*, 718 F.3d at 1332. And, there is no evidence that Defendant McLaurin or Defendant Dent knew of any risk to Craig (or any other inmate), or that Defendants knowingly or recklessly disregarded that risk. *See Hale*, 50 F.3d at 1583.

### *Failure to follow ADOC regulations*

Likewise, Craig's allegations that Defendant McLaurin and/or Defendant Dent violated ADOC rules cannot create a triable issue. Without more, the failure to follow internal prison regulations is not a basis for constitutional liability pursuant to § 1983. *Sandin*, 515 U.S. at 481–82 (prison regulations are "primarily designed to guide correctional officers in the administration of a prison," and "such

regulations [are] not designed to confer rights upon inmates").

Prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Consequently, a prison official's failure to follow internal rules or regulations does not provide a basis for relief under § 1983. *See, e.g.*, *Woodson v. Whitehead*, 673 F. App'x 931, 933 (11th Cir. 2016); *Mathews v. Moss*, 506 F. App'x 981, 984 n.3 (11th Cir. 2013) (reasoning that even mandatory language in prison regulations "is insufficient to create a protected liberty interest" (citing *Sandin*, 515 U.S. at 483–84)).

### Supervisory liability (Defendant Dent)

Nor is there a triable issue on any claim against Defendant Dent in his alleged role as a supervisor. Craig alleges that Defendant Dent, as the supervisor of the RHU, was responsible for "mak[ing] sure that all inmates housed in RHU and all officers working RHU are safe at all times." Doc. 25 at 7; *see* Doc. 1 at 12.

But, under § 1983, a defendant's position as a supervisor does not automatically subject him to liability for the conduct of subordinates through *respondeat superior* or vicarious liability. *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citations omitted).

Instead, a supervisor can be liable only if the supervisor directly participated

in the unconstitutional conduct, or if there is a causal connection between the supervisor's conduct and the alleged constitutional violation. *Harrison*, 746 F.3d at 1298 (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)); *see Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019).

A plaintiff can establish such a causal connection in the following circumstances:  a history of widespread abuse puts a responsible supervisor on notice of the need to correct an alleged violation, and he fails to do so; a supervisor's improper custom or policy results in deliberate indifference to constitutional rights; or, facts suggest that a supervisor ordered his subordinates to act unlawfully, or knew they would act unlawfully and failed to stop them. *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003).  Proof of a single incident of unconstitutional conduct is not sufficient to demonstrate a custom or policy for purposes of § 1983 liability. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).  Rather, a plaintiff must establish a pattern of similar violations.  *Id.*

As explained above, the evidence is insufficient to create a triable issue on any theory that Defendant Dent directly participated in the alleged failure to protect Craig from Jenkins' attack.  *See Harrison*, 746 F.3d at 1298.

Likewise, the evidence is insufficient to support a factual finding that there was any causal connection between the conduct of Defendant Dent and the alleged constitutional violation.  *See Harrison*, 746 F.3d at 1298.  Craig alleges that

19

Defendant Dent, as the RHU supervisor, should be liable for not ensuring that his officers—including Defendant McLaurin—followed all ADOC rules.  Doc. 1 at 16.

But Craig does not allege or identify any facts about a pattern or history of widespread abuse that put Defendant Dent on notice.  *See Gonzalez*, 325 F.3d at 1234–35.[5]  Instead, Craig alleges only the single incident involving Jenkins, which is insufficient to show supervisory liability under § 1983.  *See Craig*, 643 F.3d at 1310; *accord, e.g.*, *Henley*, 945 F.3d at 1331 (reasoning that a showing of a custom or policy requires "multiple incidents or multiple reports of prior misconduct by a

---

[5] In his response, Craig includes a citation to *Laube v. Haley*, 234 F. Supp. 2d 1227 (M.D. Ala. 2002), a case about overcrowding and inadequate supervision at an Alabama women's prison in which a preliminary injunction was granted.  Doc. 25 at 10.  Craig also provides a two-page block quotation (with no citation) that appears to be drawn from a U.S. Department of Justice (DOJ) report issued after the DOJ investigated and reported on the conditions of Alabama prisons.  *See* U.S. Dep't of Justice, Investigation of Alabama's State Prisons for Men (April 2, 2019), *available at* https://www.justice.gov/crt/case-document/file/1149971/download.  Craig does not explain the hypothetical relevance of the *Laube* case or that DOJ report; but, to the extent that he asserts that Defendants were on notice of a history of widespread abuse, the Eleventh Circuit has ruled that a "generalized awareness of risk" cannot satisfy the subjective awareness requirement on a failure to protect claim.  *See Carter*, 352 F.3d at 1350.  And, neither that case nor that report is sufficient to demonstrate that Defendants here subjectively knew of and disregarded a substantial risk or serious harm to Craig (or any other inmate).  *See, e.g.*, *Ivory v. Warden, Governor of Ala.*, 600 F. App'x 670, 678 (11th Cir. 2015) ("[The plaintiff's] contention that the conditions were so obvious that the defendants had to have known about them is insufficient without some proof of actual knowledge or circumstantial evidence by which such an inference of knowledge could be drawn. Although the defendants may have known of similar conditions in Alabama prisons generally as a result of other litigation or newspaper articles, there is nothing in the record to show that [the defendants] knew of the specific conditions . . . challenged by [the plaintiff]." (citation omitted)).

particular employee").  There is no evidence that Defendant Dent had a custom or policy that allowed for inmate assaults in the RHU—whether in connection with the lack of handcuffing or otherwise.  And there is no evidence that Defendant Dent ever ordered Defendant McLaurin (or any other officer) to act unlawfully, or ever knew that McLaurin would act unlawfully—whether on the date of the alleged inmate assault or otherwise.  *See Gonzalez*, 325 F.3d at 1234–35.

## II.   There is no triable issue on Craig's procedural due process claim against Defendants Jones and Dent.

There is no triable issue of fact on Craig's procedural due process claim against Defendants Jones and Dent.  Craig alleges that Defendant Jones found him guilty of a disciplinary infraction, and "refuse[d] to go by the truth."  Doc. 1 at 12.  Craig also alleges that Defendant Jones "stop[ped]" the disciplinary hearing, walked Craig back to his cell to "get [Craig's] statement" regarding the alleged inmate assault, and that Jones "said he was going to make a copy and give it back."  Doc. 1 at 15.  According to Craig, when he and Defendant Jones "got back" to Craig's cell, Jones "looked over [Craig's] statement and told other officers . . . to place [Craig] back in [his] cell."  Doc. 1 at 15.  Craig alleges that Defendant Jones "never gave [him] back . . . [his] statement because it had witnesses on it [who were] willing" to support Craig's version of the facts.  Doc. 1 at 15; *see also* Doc. 25 at 9 (similar).

But Craig also concedes that the warden "disapproved" Defendant Jones' finding of guilt (and the sanctions that Jones had recommended).  Doc. 1 at 15, 21.

Consequently, there was no actionable "deprivation of a constitutionally-protected liberty or property interest" anyway.  *See Hansen*, 736 F.3d at 965; *Sandin*, 515 U.S. at 486–87 (requiring either an "atypical, significant deprivation," or state action that "will inevitably affect the duration of [a prisoner's] sentence"); *Jacoby*, 835 F.3d at 1347 (a prisoner has "no right to a due process hearing . . . unless the punishment is demonstrably harsher than the ordinary conditions of prison life").  Thus, the record evidence cannot support a due process claim against Defendant Jones.

With respect to Defendant Dent, Craig alleges that Dent "told" Defendant McLaurin "to write a disciplinary on [Craig] and change the incident report of what really happen[ed]."  Doc. 1 at 12.  Craig also alleges that Defendant Dent removed him from his job as a runner, because Craig "refuse[d] to go alon[g] with the story [Dent] put together" about what had happened during the alleged inmate assault.  Doc. 1 at 16.  According to Craig, Defendant Dent created a factually inaccurate incident report.  Doc. 25 at 8.  Craig also appears to assert misconduct with regard to inmate Jenkins' witness statement, and that Defendant Dent was "changing the whole incident report [from] the truth" of what "really happen[ed]," apparently because Dent "knew" he "would have to explain to his supervisor why he allowed officers" whom he supervised to violate St. Clair and ADOC rules.  *See* Doc. 25 at 5, 7–8 (emphasis omitted).

Again, because the warden reversed Defendant Jones' disciplinary findings,

22

there was no actionable "deprivation of a constitutionally-protected liberty or property interest," and there can be no due process claim against Defendant Dent. *See Hansen*, 736 F.3d at 965; *supra*.  In this regard, Craig's alleged loss of his job as a runner cannot constitute the required "deprivation."  *See, e.g.*, *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (finding no due process violation for a job reassignment because "inmates do not have an expectation of keeping a certain job" and "job assignment and reassignment remain the prerogative of the prison administrators"); *Montgomery v. Fondren*, 2013 U.S. Dist. LEXIS 148212, at *16 (N.D. Ala. Sept. 4, 2013) (a "work assignment [or dismissal from one] alone does not rise to a constitutional violation" (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n.4 (5th Cir. 1993)) (alterations in original).

Regardless, all of Craig's allegations regarding Defendant Dent's supposed misconduct in investigating the relevant incident are speculative and, without more, are insufficient to create a triable issue.  *See Saunders*, 766 F.3d at 1266; *Jackson*, 2022 WL 303288, at *6.  Plus, even taking these allegations as true, a prisoner still generally does not have a right either against false accusations of wrongdoing, or to a truthful disciplinary report.  *See, e.g.*, *Edwards*, 520 U.S. at 648.

## III.   The court need not address other issues that Defendants have raised.

Because there is no triable issue on Craig's claims, the court need not separately address other issues that Defendants have raised in their special report—

including the application of Eleventh Amendment and qualified immunity.

## RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the court **GRANT** the defendants' summary judgment motion (Doc. 23), **DENY** Plaintiff Craig's summary judgment motion (Doc. 25), and **DISMISS** Craig's complaint **WITH PREJUDICE**, because there is no triable issue.

## NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days**.  The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings of fact and recommendations.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment entered by a District Judge.

**DONE** this July 18, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE